OPINION
{¶ 1} James W. Marshall appeals pro se from an order of the Montgomery County Common Pleas Court designating him a sexual predator under R.C. § 2950.09.
 {¶ 2} Marshall advances two assignments of error for our review. First, he alleges that the record contains insufficient evidence to support a finding that he is a sexual predator. Second, he argues that his designation as a sexual predator is against the manifest weight of the evidence.
 {¶ 3} The record reflects that Marshall was convicted in 1987 on one count of raping a person under age 13. The conviction stemmed from events that occurred when he baby-sat two boys, ages three and four. According to a PSI report, he admitted twice anally penetrating each boy. Following his conviction, he was sentenced to serve seven to 25 years in prison. After Marshall had served approximately 13 years of his sentence, the Ohio Department of Rehabilitation and Correction ("ODRC") recommended that he be designated a sexual predator. On October 13, 2000, the trial court conducted a hearing on the matter. Although no testimony was presented, the trial court received written exhibits, including the original PSI report, a 1987 forensic evaluation, a House Bill 180 screening instrument completed by ODRC, a summary of Marshall's prison record, and a February, 2000, forensic evaluation. Following the hearing, the trial court judge indicated that she had reviewed the record and, without any analysis or discussion, found that Marshall was a sexual predator. The judge then filed an order designating Marshall a sexual predator and ordering registration and community notification.
 {¶ 4} Marshall subsequently appealed from the trial court's order, and we reversed his sexual-predator classification and remanded the cause. See State v. Marshall (Nov. 16, 2001), Montgomery App. No. 18587. In so doing, we found that the trial court had failed to comply with State v. Eppinger (2001), 91 Ohio St.3d 158, which adopted a "model procedure" for sexual-offender classification hearings. In particular, we found that the trial court failed to create an adequate record for appellate review, insofar as it failed to discuss the evidence and relevant statutory factors upon which it relied to designate Marshall a sexual predator. Instead of engaging in such a discussion, the trial court simply noted that it had reviewed the record, and without any analysis, found that Marshall was a sexual predator.
 {¶ 5} On remand, the trial court once again conducted a sexual-predator hearing.[1] A transcript of that February 1, 2001, hearing reveals that the trial court reviewed this court's November 16, 2001, decision reversing Marshall's prior sexual-predator classification, and once again considered the original pre-sentence investigation report, the 1987 forensic evaluation, the House Bill 180 screening instrument, the summary of Marshall's prison record, and the February, 2000, forensic evaluation. (Tr. at 2-3). Both parties declined to present any additional testimony or exhibits, electing instead to rely solely on the information that was before the trial court when it originally designated Marshall a sexual predator. (Id. at 3). Prior to the trial court rendering a decision, however, Marshall did make a statement, indicating that he had completed the "SIR" program in prison.[2] (Id. at 3-4).
 {¶ 6} The trial court then acknowledged its obligation to "discuss on the record the particular evidence and [statutory] factors upon which it relies in making the determination regarding the likelihood of recidivism." (Id. at 4). The trial court then stated:
 {¶ 7} "There's a couple of — and again I'm not gonna go through the process of reading all of the factors articulated by Ohio Revised Code 2950.09(B)(2). But in this particular case, a couple do jump out at the Court. The first is the age of these victims, they were young children. And the fact that given the — the — the very tender ages of these children that they were really unable to — in any se — in any real fashion to object to the conduct that they were subjected to.
 {¶ 8} "Additionally, I want to point out — and this comes from the [1987] Forensic Evaluation I previously alluded to, the following language that is in that report prepared by Mr. Pavelka. And it states as follows:
 {¶ 9} `From all indications, this young man is demonstrating character traits indicative of a fixated pedophile, such as unsuccessful adult sexual relations, gross feelings of inadequacy, both social and sexual, easily controlled by others, feelings of failure with a major motivation factor of seduction. From all indications, his primary sexual orientation is now to children indicative of a mal-adaptive resolution of life issues.
 {¶ 10} `In conclusion, this gentleman is found to be a sex offender preferring young children and demonstrating a generally grossly inadequate personality make-up.'
 {¶ 11} "And I would note that based on the House Bill 180 Screening Instrument, one of the things that — one of the things that — that is well known in the literature is that someone who suffers from — or who is a pedophile, that — that type of activity or type of orientation does not usually change over time.
 {¶ 12} "I'd also like to point out briefly that the — the [2000] report from the Forensic Psychiatry Center indicates on the last page:
 {¶ 13} `That Mr. Marshall meets the criteria of the sexual predator as defined in 2950.09.'
 {¶ 14} "I agree with that conclusion and it's based upon those factors which I've already articulated and those things which I have reviewed. I therefore will make the determination actually the re-determination that Mr. Marshall is, in facts — in fact, a sexual predator." (Id. at 4-6).
 {¶ 15} On appeal, Marshall argues that the trial court once again erred in adjudicating him a sexual predator. As noted above, he alleges that the sexual-predator finding is against the manifest weight of the evidence and that the record contains insufficient evidence to support such a finding.[3] In order to classify an individual as a sexual predator, a trial court must find, by clear and convincing evidence, that the individual has been convicted of or pled guilty to a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Eppinger, 91 Ohio St.3d at 163. A clear and convincing standard of proof "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Id. at 164. This standard requires more than a preponderance of the evidence, but less than the level of certainty required for proof beyond a reasonable doubt. Id.
 {¶ 16} Marshall's rape conviction constitutes a sexually oriented offense. Thus, the only disputed issue is whether he is likely to engage in another sexually oriented offense. In determining the likelihood of recidivism, the trial court is mandated by R.C. 2950.09(B)(2) to consider the factors relating to the offender which are set out at paragraphs (a) through (j) therein. Those factors are only potentially relevant. Statev. Thompson (2001), 92 Ohio St.3d 584. Some may not be applicable in a given case, and "the judge has the discretion to determine what weight, if any, he or she will assign to each guideline." Id. at 589. Because the "guidelines do not control a judge's discretion," a factor irrelevant to a particular offender is entitled to no weight. Furthermore, the trial court may consider any other evidence it deems relevant. Id. at 587.
 {¶ 17} The non-exclusive list of factors found in R.C. §2950.09(B)(2) includes: (a) the offender's age; (b) the offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses; (c) the age of the victim of the sexually oriented offense for which sentence is to be imposed; (d) whether the sexually oriented offense for which sentence is to be imposed involved multiple victims; (e) whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; (f) if the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders; (g) any mental illness or mental disability of the offender; (h) the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; (i) whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 18} and (j) any additional behavioral characteristics that contribute to the offender's conduct. During a sexual-predator hearing, a trial court should consider the foregoing factors and "discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism." Eppinger,91 Ohio St.3d at 166. A primary objective of a sexual-predator hearing is to ensure that an adequate record exists for meaningful appellate review. Id. at 166-167.
 {¶ 19} At Marshall's sexual-predator hearing, the trial court indicated that it had considered the statutory factors set forth above. The trial court also identified the various pieces of evidence that it had reviewed. Finally, the trial court cited the evidence and factors it relied on to find that Marshall was a sexual predator. In particular, the trial court cited (1) the age of the victims, (2) the 1987 forensic evaluation, which concluded that Marshall demonstrated character traits indicative of a pedophile, (3) the House Bill 180 screening instrument, which purportedly indicated that a pedophile usually does not change over time, and (4) a purported conclusion from the February, 2000, forensic evaluation that "Marshall meets the criteria of the sexual predator as defined in Section 2950.09."
 {¶ 20} Upon review, we conclude that the trial court again has failed to make sufficient findings to support a determination, by clear and convincing evidence, that Marshall is a sexual predator. As noted above, the trial court first cited the age of the victims as a factor supporting its decision to designate Marshall a sexual predator. We note, however, that this factor is facially neutral. Although the victims were unquestionably young, the trial court failed to articulate any reason why the tender age of the victims suggests a high risk of recidivism in Marshall's case.[4] Nor did the trial court cite any record evidence to support such a conclusion.
 {¶ 21} The second piece of evidence cited by the trial court, the 1987 forensic evaluation, is unquestionably relevant to its sexual-predator finding. In that report, the examining doctor noted that Marshall exhibited characteristics of a "fixated pedophile." On several occasions, this court has stated that statistical evidence suggests a high potential for recidivism among pedophiles. See, e.g., State v.Burton (Sept. 28, 2001), Montgomery App. No. 18606; State v. Adkins (June 29, 2001), Greene App. No. 2000-CA-15; State v. Smith (June 1, 2001), Montgomery App. No. 18604; State v. Condron (March 27, 1998), Montgomery App. No. 16430. Our prior observations regarding the risk of recidivism among pedophiles appear to be consistent with the third factor cited by the trial court. As noted above, the trial court cited the House Bill 180 screening instrument and unspecified "literature" for the proposition that "a pedophile usually does not change over time[.]" Although Marshall argues that the trial court had no evidentiary basis to reach this conclusion, we find no error, particularly given our prior citations to unspecified "statistical evidence" suggesting a high risk of recidivism among pedophiles.[5]
 {¶ 22} Finally, the trial court quoted a purported finding by forensic examiner Daniel Hrinko "`[t]hat Marshall meets the criteria of the sexual predator as defined in Section 2950.09.'" (Tr. at 6). The trial court noted its agreement with this "conclusion." (Id.). In reality, however, Hrinko expressed absolutely no opinion regarding Marshall's status as a sexual predator or the likelihood of him committing another sexual offense. Instead, after a cursory review of the statutory factors set forth above, Hrinko concluded his "evaluation" by noting only that Marshall "was referred to the forensic Psychiatry Center for Western Ohio . . . to assist the court in determining whether Mr.Marshall meets the criteria of the Sexual Predator as defined in Section2950.09[.]" (Emphasis added). Contrary to the trial court's finding, Hrinko rendered no opinion whatsoever on this crucial issue. Indeed, as we noted in our November 16, 2001, decision in Marshall's first appeal, Hrinko's evaluation includes no opinion, and it contains almost no information that is of assistance to this court or to the trial court. When discussing Hrinko's expert report, we explained:
 {¶ 23} ". . . The problem is further compounded by the expert report, which provides little guidance on relevant issues. Instead of actually expressing an opinion about Marshall's likelihood to re-offend, the report simply lists the factors outlined in R.C. 2950.09(B)(2), and then comments (mostly factually) on each. For example, one factor listed in the report is `Presence of Multiple Victims.' This correlates with R.C. 2950.09(B)(2)(d), which lists as a factor `[w]hether the sexually oriented offense for which sentence is to be imposed involved multiple victims.' Concerning this particular factor, the report says only that `[t]here were two victims in this case.' We do not need to pay a forensic psychologist to tell us this.
 {¶ 24} "Similarly, the report lists `Age of the Offender,' which correlates with R.C. 2950.09(B)(2)(a) (`the offender's age'). Regarding this factor, the report says, `Mr. Marshall is currently 39 years old. Research indicates that individuals have a progressively decreasing likelihood of future offenses as they age.' On its surface, this comment appears to have meaning, but it is actually of little help.
 {¶ 25} "Since Marshall was 26 at the time of the offense, we could interpret the psychologist's remarks to mean that Marshall is less likely to re-offend because he is now older. However, one could also infer that a 39 year old sex offender may be more likely to re-offend than an even older individual. In the absence of any contextual reference, we have no way of determining how likely re-offense is, comparatively speaking, at age 39. Further, without a relevant connection to this particular case and the characteristics and age of this particular defendant, the statement that an offender is `less likely to offend as he ages' is virtually meaningless. We must stress that we do not expect complete precision in an often imprecise field. Nonetheless, if opinions are no more helpful than this, very little is gained by retaining experts."State v. Marshall (Nov. 16, 2001), Montgomery App. No. 18587 at 7-8.
 {¶ 26} The other components of Hrinko's report are at least equally useless. With respect to the offender's prior criminal record, which is another statutory factor for the trial court to consider, the report states that Marshall has prior convictions for breaking and entering and grand theft. We note, however, that this factual information was contained in Marshall's 1987 PSI report. With respect to the statutory factor concerning the age of the victims, the expert report includes a simple notation that the victims were ages three and four. Once again, this fact was set forth in the 1987 PSI report, and a forensic evaluation that merely repeats such information is of no value to us. With respect to the use of drugs or alcohol to impair the victims, which is another statutory factor, the report states only that Marshall did not appear to use such substances in the commission of his offenses. This fact is also consistent with the 1987 PSI report. Concerning the statutory factor of mental illness or disability, the report notes that Marshall does not appear to suffer from any mental illness or disability "that would impact his ability to manage his behaviors within reason." Although this aspect of the report may provide new information, it appears to militate against a sexual-predator designation. With respect to the statutory factor regarding patterns of abuse, Hrinko's report states only that "[t]here are indications that Mr. Marshall offended on more than one occasion." This observation is certainly true, given that Marshall years ago confessed to multiple offenses. Unfortunately, however, a forensic evaluation that merely repeats well-known facts is of no assistance. Regarding the statutory factor concerning cruelty, the report finds no evidence of overt acts of cruelty or threats of cruelty. Again, this observation is nothing new to us. Finally, as to the catch-all factor concerning additional relevant characteristics, Hrinko states that "Mr. Marshall appears to have benefitted from his mental health counseling, experiencing an increase in insight and awareness as to how different aspects of his life contributed to his offense, specifically his substance abuse. It is felt that he is a good candidate to benefit from continued services as they become available." This final observation by Hrinko does provide new, relevant information about Marshall. Unfortunately, however, his report fails to express any opinion about whether the "benefits" of mental health counseling have made Marshall unlikely to commit another sexually oriented offense.
 {¶ 27} In short, Hrinko's 2000 forensic evaluation cited by the trial court does little more than repeat factual information contained in both the 1987 PSI and the more recent House Bill 180 screening instrument. As we noted in our prior decision, we do not need a forensic psychologist to repeat historical facts that are already known to the court. In the context of sexual-predator hearings, an expert's role is to assist the court in determining whether a defendant is likely to commit one or more sexually oriented offenses in the future. Eppinger,91 Ohio St.3d at 162. In order to fulfill this role, Hrinko's report should have included an analysis and evaluation of the relevant facts, rather than a simple recitation of them. In other words, in order to assist a trial court in making a sexual-predator determination, an expert should explain how and why the relevant statutory factors indicate that a particular defendant is, or is not, likely to commit another sexually oriented offense. In the present case, Hrinko's report contained no such analysis, and it expressed absolutely no opinion regarding the likelihood of Marshall committing another sex crime. Consequently, the trial court erred insofar as it supported its sexual-predator ruling by relying on a non-existent opinion from Hrinko "[t]hat Mr. Marshall meets the criteria of the sexual predator as defined in Section 2950.09." (Tr. at 6).
 {¶ 28} In short, the trial court supported its sexual-predator designation with little more than the fact that approximately 14 years ago, Marshall exhibited the characteristics of a pedophile, and the fact that pedophiles as a group tend to re-offend. If these facts alone were enough to satisfy the trial court that Marshall is a sexual predator, we question why the trial court even sought Hrinko's expert opinion about whether Marshall is likely to re-offend approximately 14 years after his crime and following 632 hours of sex-offender therapy in prison.
 {¶ 29} Upon review, it appears to us that many of the statutory factors set forth in R.C. § 2950.09(B)(2) may be relevant in the present case. In its appellate brief, the state attempts to argue the relevance of some of them. See Brief of Appellee at 10-12. In our view, however, the trial court, rather than this court, bears the initial responsibility to apply the facts of Marshall's case to all pertinent statutory factors, and to make adequate findings to provide for meaningful appellate review. In the present case, the trial court failed to address most of the statutory factors at all, explaining that "I'm not gonna go through the process of reading all of the factors articulated by Ohio Revised Code 2950.09(B)(2)." (Tr. at 4). In our view, the trial court erred in failing to address statutory factors that, on their face, seem to have relevance in the present case.
 {¶ 30} In any event, with respect to the few findings the trial court did make, its sexual-predator designation is not supported by clear and convincing evidence that Marshall is likely to commit another sexually oriented offense. The fact that Marshall exhibited the characteristics of a pedophile 14 years ago and the fact that pedophiles, as a class, are prone to re-offend do not constitute clear and convincing evidence that Marshall himself is likely to commit another sex crime at this time. In reaching this conclusion, we express no opinion about whether Marshall qualifies as a "sexual predator." We hold only that the trial court abused its discretion by failing to address a number of seemingly relevant statutory factors and by failing to make adequate findings to support its decision. Accordingly, the trial court's sexual-predator determination will be reversed once again, and this cause will be remanded for the trial court to provide additional analysis of the statutory factors set forth in R.C. § 2950.09(B)(2). Given that this case is being reversed and remanded for additional analysis of the statutory factors, we do not decide whether the record contains sufficient evidence to support a sexual-predator designation or whether such a finding might be against the manifest weight of the evidence. Accordingly, Marshall's two assignments of error are sustained in part and overruled in part, as premature. In particular, the assignments of error are sustained, insofar as the trial court failed to create an adequate record by not engaging in an analysis of the facts in light of several seemingly relevant statutory factors. The two assignments of error are overruled, as premature, insofar as Marshall suggests that the record itself contains too little evidence to support a sexual-predator designation.
 {¶ 31} Judgment reversed and cause remanded for further proceedings consistent with this opinion.
WOLFF, P.J., and YOUNG, J., concur.
[1] We note that the judge who originally classified Marshall a sexual predator was no longer on the bench at the time of this most recent sexual-predator hearing.
[2] Although the record is not entirely clear, it appears that the SIR program may have been a type of sexual-offender program.
[3] In his appellate brief, Marshall divides his two assignments of error into 16 issues for our review. We note, however, that most of Marshall's "issues" are simply various restatements of the proposition that the trial court's sexual-predator designation is supported by insufficient evidence or is against the manifest weight of the evidence. In his third "issue" under his first assignment of error, however, Marshall does raise a different argument. There he contends that the trial court erred, after our prior remand, by not assigning a new psychological expert to evaluate him. We find this argument unpersuasive, however, as nothing in the record suggests that Marshall ever asked the trial court to appoint a new expert.
[4] When mentioning the age of the victims, the trial court did not make any finding that a sexual assault on young children is indicative of a high potential for recidivism. Instead, the trial court noted only that, as a result of their age, the victims were unable to "object." The trial court made no effort to explain the relevance of this fact to its sexual-predator determination.
[5] Unlike the trial court, however, we find nothing in the House Bill 180 screening instrument itself which suggests that pedophiles usually do not change over time. In any event, this statement by the trial court is consistent with our prior observations that pedophiles have a high risk of recidivism.